UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL O. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 4644 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PATRICK R. DONAHOE, Postmaster General, United States Postal Service, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nathaniel O. Smith brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., against his employer, Patrick R. Donahoe, Postmaster General of the United States Postal Service ("USPS"). The complaint alleges that USPS placed Smith on a reduced work schedule as of September 15, 2010, and sent him home for the day on October 26, 2010, in retaliation for his prior Equal Employment Opportunity ("EEO") complaints. USPS has moved for summary judgment. The motion is granted.

**Background**

The facts are stated as favorably to Smith as the record and Local Rule 56.1 allow. Smith began working as a letter carrier at the United States Post Office in Maywood, Illinois, in 1984. Doc. 21 at ¶ 1. In November 1986, Smith suffered a work-related back injury. *Id*. at ¶ 2. Effective March 9, 2002, Smith was reassigned to a custodial laborer position at the Maywood facility. *Id*. at ¶ 3. The duties of the custodial laborer position included picking up trash, landscaping, clearing sidewalks of snow and ice, loading and unloading supplies and equipment, and operating sanders and waxers. *Ibid*. From 2003 to 2008, Smith filed seven EEO complaints;

none of the USPS employees named in those complaints were involved in the allegedly retaliatory conduct at issue in this suit. Doc. 22 at ¶ 2.

In November 2008, Smith submitted a form from his physician (called a "CA-17") listing his medical restrictions. Doc. 21 at ¶ 4. The form listed the following restrictions: walking and standing limited to two hours per day; no kneeling, bending, stooping, pushing, pulling, or twisting; no operating machinery; and no exposure to chemicals, fumes, dust, or noise. *Ibid*.; Doc. 19-3 at 2.

USPS engaged in a National Reassessment Process ("NRP") in 2009. Doc. 21 at ¶ 5. The NRP's purposes were to assess the work limitations of injured USPS employees, to determine the availability of work within those limitations, and to reassess each employee's current position and offer him a position in which he could perform necessary work as opposed to "make work" tasks. *Ibid*. If an employee's medical restrictions allowed him to perform some necessary work but not a full day's worth, he would be assigned to work a partial day. *Ibid*. If there was no available necessary work at the employee's location, USPS would attempt to find such work at a facility within a fifty mile radius of that location. *Ibid*. And if no available necessary work was found, the employee would be given a "complete day no-work letter," would be sent home, and would be permitted to apply for compensation. *Ibid*.

Sherman Jones became Postmaster of the Maywood facility in September 2009. *Id*. at ¶ 6. Smith retained his duties as a full-time custodial laborer at the facility until September 11, 2009, when his schedule was reduced from eight hours per day to two hours per day. Doc. 28 at ¶ 1. Jones made the decision based on the medical restrictions set forth in Smith's then-current CA-17 form and with input from Sherman Carter and Shirelle Williams, who were members of the NRP team at the Maywood facility. Doc. 21 at ¶ 8. Smith filed an EEO complaint in

-2-

November 2009 regarding the reduction in his work schedule; the complaint named Carter, Gilbert Lopez, Tammy Vucsko, and Lisa Ward-Frazier, but not Jones or Williams, as the persons responsible for the reduction. Doc. 28 at ¶ 2; Doc. 28-1.

In January 2010, Smith gave Jones an updated CA-17 form that increased his walking and standing limit from two hours to four hours per day. Doc. 22 at ¶ 6. In April 2010, Jones asked Smith for another copy of the updated CA-17 form. *Id*. at ¶ 7. When Jones and Wright later made another request for the updated CA-17 form, Smith refused, and on September 15, 2010, his schedule again was reduced to two hours per day. *Id*. at ¶ 9. (This factual assertion is made by Smith; the assertion's premise, which Smith's brief also reflects, Doc. 23 at 2, is that Smith's daily work schedule was increased from two hours to four hours at some point after January 2010, only to be reduced back to two hours on September 15, 2010.) Wright was the Customer Service Supervisor at the Maywood facility and the liaison between the NRP and Maywood employees; his responsibilities included obtaining medical documentation from injured employees, sending the documentation to the NRP team, and completing the paperwork related to employment actions resulting from the NRP process. Doc. 21 at ¶ 9.

On October 12, 2010, Smith provided Wright with an updated CA-17 form; the form stated, among other things, that Smith could walk and stand for up to four hours per day. *Id*. at ¶ 10; Doc. 19-4 at 2-4. On October 14, 2010, Wright prepared an NRP "Limited Duty Priority for Assignment" worksheet for Smith, which Jones signed twelve days later. Doc. 21 at ¶ 11. On October 26, 2010, at the instance of Jones and Carter, Smith was given a "complete day no-work" letter and was sent home for that day. *Id*. at ¶ 12.

At some point thereafter, Smith timely filed an EEO complaint alleging that he was placed on a reduced work schedule as of September 15, 2010, and that he was sent home for the

day on October 26, 2010, in retaliation for his prior EEO complaints. Doc. 1-1 at 3. Smith did *not* claim in that EEO complaint, and does not claim in the complaint that initiated this lawsuit, that his September 2009 placement on a reduced work schedule resulted from unlawful retaliation. *Ibid.*; Doc. 1 at ¶ 7. USPS rejected his retaliation claim in a comprehensive final agency decision and gave Smith the right to bring a civil action to press that claim. Doc. 1-1 at 2-28. This lawsuit followed. Doc. 1. Before proceeding to the merits, it is necessary to address two issues raised by the parties' Local Rule 56.1 submissions.

First, in its Local Rule 56.1(a)(3) statement, USPS asserts that Jones, Wright, Carter, and Williams—the individuals responsible for the allegedly retaliatory conduct—were unaware of Smith's pre-2010 EEO activity and had not been named in any of Smith's pre-2010 EEO complaints. Doc. 19 at ¶ 13. Smith's Local Rule 56.1(b)(3)(B) response disputes that assertion only as to Carter, who in fact was named in the November 2009 EEO complaint. Doc. 21 at ¶ 13; *see also* Doc. 22 at ¶¶ 12-13. By not disputing USPS's assertion as to Jones, Wright, and Williams, Smith has admitted that they were unaware of Smith's pre-2010 EEO activity. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.") (internal quotation marks omitted); *Nicholson v. Allstate Ins. Co.*, 2012 WL 182216, at *5-6 (N.D. Ill. Jan. 23, 2012).

Contradicting the admission in his Local Rule 56.1(b)(3)(B) response, Smith asserts in his Local Rule 56.1(b)(3)(C) statement of additional facts that Jones, Williams, and Wright *were* aware of Smith's 2009 EEO complaint. Doc. 22 at ¶ 3. For support, Smith points to affidavits

that Jones, Williams, and Wright tendered in connection with the administrative investigation following the 2010 EEO complaint; according to Smith, those affidavits "indicate that [Jones, Williams, and Wright] each received information from Smith for which Smith denied ever talking to them about his 2009 EEO case." *Ibid*. After carefully reviewing the three affidavits, the court finds nothing to support Smith's assertion that Jones, Williams, and Wright were aware of Smith's 2009 EEO complaint. Doc. 19-3 at 11-30. Because Smith's Local Rule 56.1(b)(3)(C) statement does not provide evidentiary support for that assertion, the assertion will be disregarded, eliminating the need to decide whether Smith can create a genuine issue of fact by contradicting an admission in his Local Rule 56.1(b)(3)(B) response with an assertion in his Local Rule 56.1(b)(3)(C) statement.

The second issue raised by the Local Rule 56.1 papers concerns similarly situated employees. Smith identified one such employee, Yali Simmons; according to Smith, Simmons suffered a permanent job injury and was relocated out of the Maywood location without any reduction in hours. Doc. 21 at ¶ 14. Smith has provided no evidence regarding Simmons' supervisor, medical restrictions, or other details that would allow a comparison to Smith. *Ibid*.

## Discussion

Title VII prohibits an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). The purpose of this anti-retaliation provision is to advance the statute's ban on employment discrimination "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006); *see also id*. at 68 (the "antiretaliation

-5-

provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers") (citation omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Smith may seek to avoid summary judgment on his retaliation claim through either the direct or indirect methods of proof. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Smith pursues both methods, as well as a third, which are considered in turn.

### A. Direct Method

Under the direct method, a plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 859; *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). USPS argues that Smith has failed to satisfy the third element. Doc. 18 at 6-7. To establish a causal connection, Smith must put forth evidence that would allow a reasonable factfinder to conclude that his pre-2010 EEO complaints "were a substantial or motivating factor" in USPS's decision to reduce his hours as of September 15, 2010, and to send him home for one full day on October 26, 2010. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) (internal quotation marks omitted).

Causation may be shown by direct evidence, which "entail[s] something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). No such evidence has been adduced here. Causation also may be shown "by presenting a 'convincing mosaic' of

circumstantial evidence that would permit the same inference [of retaliation] without the employer's admission." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted). Pertinent circumstantial evidence can consist of (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of [retaliatory] intent might be drawn," (2) "evidence showing that the employer systematically treated other, similarly situated … employees better," or (3) "evidence that … the employer's justification [for the adverse action] is pretextual." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 860. The appropriate focus "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

Smith's brief gives cursory treatment to causation. The brief does provide a comprehensive summary of the legal standards governing the causation inquiry. Doc. 23 at 4-6, 10-11. Where the brief falls short is in applying that law to the facts of this case. Smith first tries to avoid the subject altogether, contending that USPS "can't argue that Plaintiff cannot establish a causal connection" because USPS did not argue causation in its initial brief. *Id*. at 11. That is incorrect; USPS's initial brief clearly and explicitly argues that Smith cannot establish the causation element of his direct case. Doc. 18 at 6-7.

Smith next asserts that "the overwhelming amount of evidence discussed [in the fact section of his brief] is sufficient to show that Smith's protected activity was a motivating factor, if not the only factor, in Defendant's decision to reduce Smith's work opportunities." Doc. 23 at

11. But rather than explain *how* that evidence is sufficient to show causation, Smith stops there, leaving the court with nothing more than *ipse dixit*. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (quoting *Liberles v. Cnty. of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)) (internal quotation marks omitted). Having failed to do so, Smith forfeited any argument regarding the causation element of his direct case. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment. Although [the plaintiff] did attempt to incorporate his well-developed arguments pertaining to the retaliation claim, and there is substantial overlap with regard to the prima facie requirements between the two claims, he did nothing more."), *aff'd on other grounds*, 553 U.S. 442 (2008); *United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994) (holding an argument forfeited where the party "merely devoted two short paragraphs on the general law on attempt, without offering any argument as to how this law applied to the facts of his particular case").

Forfeiture aside, Smith's causation argument has no merit. As noted above, Smith failed to adduce evidence showing that Jones, Wright, and Williams were aware of his pre-2010 EEO complaints. It follows that their conduct cannot have caused the adverse actions of which Smith complains in this case. *See Nagle*, 554 F.3d at 1122 ("In order to establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory."); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) ("It is not sufficient that [an employer] could or even should have known about [an

employee's] complaint; the employer must have had actual knowledge of the complaints for [its] decisions to be retaliatory.") (alterations in original) (internal quotation marks omitted); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("absent [actual employer] knowledge, there can be no causal link"). Carter is the only one of the four person allegedly responsible for those adverse actions who could be found to have known about Smith's protected activity.

There is insufficient evidence, however, to establish a causal link between Carter's alleged animus toward Smith for his pre-2010 EEO activity and the adverse actions. Smith's brief fleetingly refers to "suspicious timing," which the court generously will construe as an argument that a causal link is shown by the fact that his pre-2010 EEO activity predated both instances of retaliation. "In egregious cases, suspicious timing alone might create a triable issue on causation[,] … [b]ut it rarely does." *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 389-90 (7th Cir. 2012) (citations omitted). "Under ordinary circumstances," by contrast, "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment *provided that* there is other evidence that supports the inference of a causal link." *Id*. at 390 (alteration in original) (internal quotation marks omitted).

There is no such "other evidence" in this case, and this is not the rare case where temporal proximity alone creates a triable issue on causation. Over ten months passed between the filing of Smith's last EEO complaint in November 2009 and the first adverse action he suffered, the schedule reduction imposed on September 15, 2010; over eleven months passed between that EEO complaint and October 26, 2010, the day he was sent home from work. The Seventh Circuit has "held that an interval as short as seven weeks, standing alone, is insufficient to create a material issue regarding causation." *Ibid*. (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008)). The same result is warranted here, given that nearly a year

passed between the protected conduct and the alleged retaliatory actions. It is possible, though unlikely, that a different result would have obtained had Smith adduced evidence that Carter did not learn of the 2009 EEO complaint until shortly before the two adverse actions. But Smith provides no such evidence; either he did not take Carter's deposition, or he took the deposition and either did not ask the right questions or did not submit the relevant portions as part of the summary judgment record.

In sum, Smith has not presented either direct evidence of causation or a "'convincing mosaic' of circumstantial evidence that would permit [an] … inference [of retaliation]." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted). Smith therefore cannot survive summary judgment under the direct method.

**B.    Indirect Method**

The indirect method has three steps. First, Smith must make a prima facie case of retaliation by showing that: "(1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich*, 457 F.3d at 663 (alterations in original omitted) (internal quotation marks omitted); *see also Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 923 (7th Cir. 2007); *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006); *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). If Smith makes his prima facie case, then the burden shifts to USPS to articulate a "legitimate, non-retaliatory reason" for its actions. *Basith v. Cook Cnty.*, 241 F.3d 919, 933 (7th Cir. 2001); *see also Brewer*, 479 F.3d at 915; *Tomanovich*, 457 F.3d at 663. If USPS meets that burden, then Smith must produce evidence that USPS's stated reasons are pretextual. *See Brewer*, 479 F.3d at 915; *Tomanovich*, 457 F.3d at 663.

"Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Silverman*, 637 F.3d at 743-44 (alteration in original) (internal quotation marks omitted).

USPS argues that Smith has failed to make his prima facie case because he has not adduced evidence that he was treated worse than similarly situated employees. Doc. 18 at 7. To satisfy this element of his prima facie case, Smith must identify another employee who was treated more favorably and who is "directly comparable in all material respects to [him]." *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004); *see also Sublett*, 463 F.3d at 740. Relevant factors include whether the Smith and the other employee or employees "1) held the same job description, 2) were subject to the same standards, 3) were subordinate to the same supervisor, and 4) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Sublett*, 463 F.3d at 740-41 (internal quotation marks omitted).

As noted above, Smith identifies only one allegedly comparable employee: Yali Simmons. The record evidence is far too thin to establish that Smith and Simmons were similarly situated. The only evidence Smith adduced is that Simmons suffered a permanent job injury and was relocated out of the Maywood branch without any reduction in her hours. Doc. 21 at ¶ 14. Smith has provided no evidence regarding the nature of Simmons' injury or her supervisor, medical restrictions, job duties, or qualifications. *Ibid*. Without such evidence—particularly evidence of Simmons' medical restrictions—it is impossible to evaluate whether Smith and Simmons were similarly situated. Under governing precedent, "it was up to [Smith] to find others who were directly comparable in all material respects." *Sublett*, 463 F.3d at 740. Having failed to do so, Smith cannot defeat summary judgment under the indirect

method. *See Jordan v. City of Gary, Ind.*, 396 F.3d 825, 836 (7th Cir. 2005) (affirming summary judgment because the plaintiff "failed to supply … an example of a similarly situated employee … who was treated differently"); *Rucker v. Ill. Dep't of Children & Family Servs.*, 326 F. App'x 397, 399 (7th Cir. 2009) (affirming summary judgment because the other employees were not similarly situated to the plaintiff); *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (same).

### C. Mixed-Motive Method

Finally, Smith attempts to defeat summary judgment with what he calls the "mixed-motive" method. Doc. 23 at 7. There is no separate mixed-motive method of defeating summary judgment in a retaliation case. The Seventh Circuit has held that there are only two methods: the direct method and the indirect method. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) ("The plaintiff in a retaliation case should have two (and only two) distinct routes to … preventing summary judgment."). Some cases do refer to a "mixed-motive" method, but only as a synonym for the direct method. *See*, *e.g.*, *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998-99 (10th Cir. 2011) (referring to the "direct/mixed motives approach") (internal quotation marks omitted); *Brantley v. Unified Sch. Dist. No. 500*, 405 F. App'x 327, 331 (10th Cir. 2010) ("This direct method is often referred to as the 'mixed-motive' theory."); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000) (holding that the plaintiff could "proceed under the 'mixed motives' or direct method" or "could avoid summary judgment by using the indirect, burden-shifting approach"); *Marshall v. Am Hosp. Ass'n*, 157 F.3d 520, 525 (7th Cir. 1998) (same).

It is true that *Grigsby v. LaHood*, 628 F.3d 354 (7th Cir. 2010), independently analyzed a retaliation plaintiff's claim under the "mixed-motive" method after rejecting his invocation of

the direct and indirect methods. *Id*. at 360-61. *Grigsby* does not acknowledge, let alone reject, the Seventh Circuit's earlier statement in *Stone* that there are only two ways for a retaliation plaintiff to defeat summary judgment, the direct method and the indirect method. In any event, as a practical matter, *Grigsby* sees no daylight between the direct method and the mixed-motive method; it holds that "[t]o put forth a mixed-motive claim, [the plaintiff] must nevertheless come forth with direct or circumstantial evidence of discrimination," just as under the direct method. *Id*. at 360. And because the plaintiff in *Grigsby* failed to adduce direct or circumstantial evidence sufficient to survive summary judgment under the direct method, the court summarily rejected his argument under the mixed-motive method. *Ibid*. It follows that even if the law recognized a mixed-motive method for defeating summary judgment, the court would reject Smith's invocation of that method for the same reason it rejected his invocation of the direct method.

## Conclusion

For the foregoing reasons, USPS's motion for summary judgment is granted. Judgment will be entered in favor of USPS and against Smith.

September 7, 2012

_____
United States District Judge